CALIFORNIA PINE BOX AND LUMBER COMPANY
v. WASATCH ORCHARD COMPANY.

No. 2215.   Decided June 17, 1911 (117 Pac. 35).

1. SALES—BREACH OF CONTRACT—DAMAGES. The measure of damages for the failure of a seller to deliver goods sold is the difference between the contract price and the market value of the goods at the time and place fixed for delivery. (Page 330.)

2. SALES—BREACH OF CONTRACT—DAMAGES. Where a manufacturer and seller of box shooks for use by dealers in fruit failed to deliver as required by contract of sale stipulating for deliveries as ordered by the buyer, and the buyer was compelled to purchase an inferior quality of shooks, the buyer could at least recover the difference between the market value of the quality of shooks contracted for and the contract price. (Page 330.).

3. SALES—BREACH OF CONTRACT—FAILURE TO DELIVER. A manufacturer of box shooks used by fruit dealers contracted to deliver to a dealer as ordered all the shooks required by him for one year. The dealer from time to time ordered shooks, but shipments were, without cause, delayed by the manufacturer, and the buyer was compelled to purchase shooks of an inferior quality. The manufacturer absolutely failed to deliver a quantity of shooks ordered. Held, to justify the court in treating the manufacturer's failure as a total failure to deliver within the rule defining the measure of damages in case goods sold are not delivered. (Page 332.)

4. EVIDENCE—PAROL EVIDENCE—AMBIGUITY. A contract of sale which stipulates that it shall continue in force for one year, commencing March 7, 1906, and ending March 6, 1907, is unambiguous, and does not require evidence to assist the court in interpreting it. (Page 333.)

5. CUSTOMS AND USAGES—CONTRACTS—CONSTRUCTION. Where the parties to a contract fix in unmistakable terms the duration thereof, the court must presume that they did not intend to follow any custom as to the duration of the contract, and in the absence of proper allegations and proof, the parties may not depart from the contract. (Page 333.)

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—AMOUNT OF DAMAGES AWARDED. Where the amount allowed by the trial court as damages for breach of a contract of sale is sustained by some evidence, the amount allowed will not be disturbed, though there was evidence justifying a larger amount. (Page 333.)

7. SALES—BREACH OF CONTRACT—DAMAGES. Damages claimed by a fruit dealer as resulting from his inability to sell his fruit as promptly as he could have done if a seller of box shooks had delivered them at the times ordered, as provided by the contract of sale, are too remote and speculative to be considered in determining the damages for the seller's breach of contract. (Page 333.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by California Pine Box and Lumber Company against the Wasatch Orchard Company.

From a judgment granting partial relief, plaintiff appeals, and defendant appeals and presents cross-assignments.

AFFIRMED ON BOTH APPEALS.

*S. T. Corn* and *J. N. Kimball* for appellant.

*Agee & McCracken* for respondent.

FRICK, C. J.

Appellant brought this action to recover an alleged balance due on an account for merchandise sold and delivered by it to respondent. Appellant, as a corporation of California, during the times mentioned herein, was engaged in the manufacture and sale of box shooks, or material used by growers, shippers, and dealers in fruit, in which latter business, as a Utah corporation, respondent was engaged at Evona, Utah. Respondent, in its answer, admitted the purchase of the merchandise as alleged in the complaint, and that the amount claimed by appellant, to wit, the sum of $2,143.05, would be due on said account were it not for certain facts which respondent set forth as a counterclaim against the appellant.

The material facts, we think, are fairly reflected in the court's findings, which, in substance, are: That on March 7, 1906, the parties to this action entered into a contract in writing whereby appellant sold to respondent and agreed to deliver to it from time to time as the same should be ordered or required by respondent all of the "box shooks" required by respondent in its factory near Ogden, Utah, for the period of one year ending March 6, 1907, such shooks to be delivered f. o. b. at respondent's factory aforesaid. The style, quality and sizes of said box shooks, and the prices to be paid therefor, fully set forth. The workmanship was to be first-class and shipments were to be made by appellant in car load lots as ordered or directed by respondent, each shipment to be made within ten days after the receipt of the order from respondent to appellant. It is also found that appellant should

not be liable for nondelivery if delivery should be rendered impossible by reason of the destruction of appellant's plant, "by fire, strikes, or other good cause over which it might have no legal control;" that after the contract was entered into, respondent, pursuant thereto, and in accordance with its terms, from time to time ordered large quantities of box shooks in carload lots from appellant, which orders were all received by appellant before March 7, 1907; that pursuant to the orders aforesaid appellant shipped large quantities of box shooks to respondent for all of which it paid appellant the contract price except for the last three carload lots amounting to $2,143.05; that no part of said box shooks were shipped within the time specified in the contract after an order therefor was received by appellant, and the shipments were delayed by appellant without "sufficient or reasonable excuse for such delay, and in many instances shipments were delayed for several months after the plaintiff received the orders therefor;" that by reason of appellant's failure to ship the box shooks as ordered respondent was compelled to purchase from other dealers large quantities of box shooks of an inferior quality, by reason of which it was damaged in the sum of $596.20; that in addition to the foregoing the appellant, without cause, also failed to ship to the respondent three carloads of box shooks ordered by it pursuant to the contract, by reason of which respondent was compelled to purchase shooks from other dealers of an inferior quality at a price greater than that stipulated for in the contract, which, for three carloads, amounted to the sum of $1194. It is further found that respondent in its factory and business required all of the box shooks it had ordered from appellant including all that it was compelled to purchase from other parties as aforesaid, and that the failure to ship said box shooks by appellant was without excuse and wrongful and willful on its part. The respondent had also set up some other items of damage in its counterclaim, but the court found that the respondent's claims in that regard were not sustained by the evidence. The court, therefore, allowed appellant its claim of $2,143.05 in full and

allowed respondent on its counterclaim as damages the total sum of $1,790.20. The lesser sum when deducted from the greater left a balance due to appellant on its claim amounting to $352.85, which, with legal interest thereon from the time it should have been paid to the time of the judgment, aggregated the sum of $431.60, for which amount the court entered judgment in favor of appellant. The appeal is from such judgment.

The appellant has assigned a large number of errors, but counsel have argued only a few of the assignments in their brief, which we will now consider in their order. Counsel's first contention that the court erred in finding that there was no legal cause or excuse for appellant's failure to ship the material as the same was ordered by respondent and in accordance with the terms of the contract is clearly untenable. The court's findings in that regard are in accordance with the weight of the evidence. The contention that the court erred in allowing the sum of $596.20 as damages for delayed shipments is, in our judgment, not well founded. The evidence was sufficient to authorize the court to find that the appellant, without cause, failed to ship and deliver to respondent the box shooks at the times specified in the contract, and that the kind and quality of box shooks bought by respondent from appellant increased in price or market value after the contract was entered into so that at the time when the box shooks should have been delivered as contemplated by the contract such shooks were considerably higher in price, or more valuable, than the price they were sold at. Further, that by reason of appellant's delays respondent was compelled to enter the general market for box shooks, and that in doing so it was compelled to purchase shooks of an inferior quality, which, when made up into boxes, were undesirable in which to ship respondent's fruit to its customers. The evidence also justified the finding that respondent needed and actually used all the box shooks it purchased from other dealers as well as the delayed shipments it received from appellant as aforesaid. In other words, if appellant had complied with the terms of its contract, respondent would have received from appellant

all the box shooks it needed of the quality contracted for and that respondent bought no more box shooks from other dealers than it was compelled to in order to supply its needs, and all of which were of an inferior quality as compared with the shooks purchased from appellant.

It is substantially upon the foregoing facts that the court applied the general rule of damages, namely, that respondent as the purchaser was entitled to recover as damages the difference between the contract price of the box shooks and the market value thereof at the time and place fixed for delivery. That such is the measure of damages when goods are sold and not delivered is elementary. (3 Suth. on Damages [3d Ed.], section 651, and cases there cited.)

Counsel for appellant do not dispute the foregoing rule, but, as we understand them, they insist that the rule has no application to the facts and circumstances of this case. They contend that respondent received and used the box shooks ordered from and shipped by appellant, notwithstanding that the shipment may have been greatly delayed. They further urge that although the respondent was required to purchase inferior shooks to supply its needs, it nevertheless used the shooks so purchased for the purpose it would have used those it purchased from, but did not obtain from, appellant, and hence it is contended respondent was not damaged. The evidence is to the effect that while the inferior box shooks were used by respondent they were used only because respondent could not obtain shooks of a better quality, and that the inferior shooks were undesirable and of lesser market value than the price of the shooks purchased from appellant. The evidence is also to the effect that, when packed in boxes of a better quality, fruit could be sold more readily and perhaps in larger quantities than in boxes made of inferior material. The legal phase of the case, therefore, is as follows: If appellant had refused to ship any box shooks under the contract at all, or if, after appellant had breached the contract in failing to ship as ordered, respondent would have refused to receive any shooks, and the market

value of the shooks had risen above the contract price, then the measure of damages applied by the court would have been the correct one may be assumed. Again, if respondent had received the delayed shipments and had not been compelled to purchase any other shooks in conducting its business, then we think the acceptance of the delayed shipments would perhaps have prevented respondent from insisting upon appellant's breaches in not shipping promptly as ordered. The respondent had a right to receive from appellant all the box shooks respondent needed in its business and appellant was obliged to deliver shooks of the kind and quality and at the times specified in the contract. This, appellant, without cause, refused to do. Respondent, in order to meet its wants, was thus compelled to pack and offer for sale its fruit in inferior boxes when it had contracted for better ones. If respondent had been compelled to purchase the same quality of boxes from other dealers which it had ordered from appellant, and would have been obliged to pay a higher price therefor, then of course it could recover the difference between such price, if it was the market value, and the contract price. Respondent, however, could not purchase box shooks of the quality contracted for because none were obtainable in the market, and hence it had to do the best it could, namely, buy such as it could get although the shooks obtainable were undesirable. Having done the best it could, the rule of damages would follow the general rules as near as may be under the circumstances. (*Haskell v. Hunter,* 23 Mich. 305; *Miller v. Stern,* 25 Misc. Rep. 690, 55 N. Y. Supp. 765.) If, however, box shooks of as good a quality as that purchased from appellant could have been had, the market value of such a quality the evidence shows would have been just what the court allowed as damages. Why is not respondent entitled to the difference between the market value of the good quality of the shooks it was entitled to have and the contract price of the kind and quality of the shooks purchased from appellant whether the respondent was compelled to and did purchase an inferior quality of shooks or not? If the contentions of counsel for appellant prevail, then it follows that a vendor of

goods of a particular kind and quality may enter into a contract of sale with a vendee and agree to deliver to the latter all the goods of the kind and quality he desires at a price agreed upon, and when the time for delivery arrives, or at any time thereafter, after the market value of the goods sold has risen, the vendor may decline to deliver the goods, and in case the vendee is compelled to purchase and use goods of an inferior quality from other dealers, the vendor may say to the vendee: "Since you have supplied your wants with goods of an inferior quality at no greater cost to yourself than you would have been required to pay me for the better quality you are not damaged and hence cannot recover." If this be sound doctrine, then a vendor of goods of a superior quality need not comply with his contract of sale in case the market value of his goods advances if the vendee after the goods should have been delivered is forced to and does meet his wants with an inferior quality of goods to that purchased from the vendor.

In view of all the circumstances of this case we think the court was right in treating the appellant's failure to deliver the box shooks at the times agreed upon as a total failure to deliver. In this view, of course, the general rule with respect to the measure of damages was the correct one.

In view of the evidence, we cannot see how the court could have applied a more favorable rule or measure of damages for appellant, and, in view that respondent does not complain but insists upon the foregoing measure of damages, we discover no prejudicial error in the rulings of the court.

What has been said with respect to the measure of damages also disposes of that question as it affects the three carloads of box shooks which were ordered but not delivered to respondent at any time. Counsel for appellant, however, contend that the court erred in allowing the damages for the three carloads because appellant had not contracted to deliver them to respondent. This contention is based upon the theory that the contract terminated with the fruit season of 1906. To establish the fact that the contract ended with the year 1906 appellant offered proof to the effect that contracts

of the kind or character in question by reason of a general usage or custom expired with the season in which they are entered into and that therefore the contract in question terminated with the end of the year 1906. It is extremely doubtful whether appellant's offer amounted to an offer to prove the existence of a general trade usage or custom.

Be that as it may, however, the contract expressly provides "this contract shall continue in full force and effect for the period of one (1) year commencing March 7, 1906, and ending March 6, 1907." The term during which the contract was to be in force was therefore expressed in clear and unambiguous terms which speak for themselves, requiring neither construction nor evidence to assist the court in interpreting the meaning thereof.

Moreover, when parties in unmistakable terms fix the duration of a contract, it must be presumed that they did not intend to follow the usage or custom in that regard, if there be such, and in the absence of proper allegations and proof parties cannot be permitted to depart from the terms of the contract in this regard any more than in any other. These principles are elementary and hence do not require either argument or authority.

We are of the opinion that the findings of fact, conclusions of law, and judgment on appellant's appeal should be affirmed. On respondent's appeal and cross-assignments, we are likewise of the opinion that the judgment should prevail.

The contention that the court erred in not allowing respondent additional damages is, in our judgment, not sustained by the evidence. At least the amount allowed is sustained by some evidence, although there was some evidence on which the court might have based a larger amount. The question was, however, for the trial court and not for us to determine.

Nor is the contention well founded that the court erred in finding that respondent had not sufficiently established the fact that it suffered damages for the reason that it could not sell and deliver its fruit as promptly as it

could have done if appellant had shipped and delivered box shooks at the time they were ordered. Apart from the want of evidence upon that question, the damages asked for, in our judgment, were in their nature speculative and remote. In either view, therefore, the court did not err in limiting the damages as it has done.

We think the judgment should be affirmed on both appeals. It is so ordered. Respondent to recover costs.

McCARTY and STRAUP, JJ., concur.